COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| OCTAVIO AMARO,<br><br>    Appellant,<br><br>v.<br><br>THE STATE OF TEXAS,<br><br>    Appellee. | §<br>§<br>§<br>§<br>§<br>§<br>§ | No. 08-14-00052-CR<br><br>Appeal from the<br><br>346th District Court<br><br>of El Paso County, Texas<br><br>(TC# 20120D04658) |

## O P I N I O N

Appellant Octavio Amaro was indicted on one count of felony assault family violence by strangulation. A jury found Appellant guilty of the lesser included offense of assault causing bodily injury, a Class A misdemeanor, and sentenced him to a one-year jail term and a fine of $4,000. On appeal, Appellant contends the trial court erred in refusing to grant a mistrial based on improper jury argument and in granting the State's request to instruct the jury on the lesser included offense of assault causing bodily injury. Appellant also asserts the evidence was insufficient to support the jury's verdict. We affirm.

### FACTUAL BACKGROUND

In August 2012, Appellant became involved in an argument with Danielle Dorado, his companion of five years and the mother of his child, after Dorado found text messages on

Appellant's cell phone that led her to believe Appellant was cheating on her. After the argument turned physical, Dorado called 911, and law enforcement was dispatched to the scene.

In the recording of the 911 call, Dorado is heard saying Appellant had hit her in the face, pulled her hair, torn off her clothes, pushed her down, and dragged her across the floor. When El Paso Police Officer Jose De Avila arrived, Dorado informed De Avila that when she confronted Appellant about the text messages, Appellant pushed her, grabbed her by the neck, and then dragged her through the hallway of their home for 10 to 20 feet. Although Dorado did not use the term "chokehold" to describe how Appellant had grabbed her, she made gestures that led De Avila to believe Appellant had grabbed Dorado by the neck in a chokehold position. Dorado reported that when Appellant grabbed her by the neck, she had "difficulty breathing" and "problems breathing," but that she never stopped breathing during the incident. Dorado also reported that Appellant had pinned her down by placing his leg on her chin and neck area, and would not allow her to free herself.

De Avila noticed visible injuries on Dorado's face, as well as "[s]cratch marks and redness" around her neck, which led him to suspect that she had been assaulted and "squeezed" around her neck. De Avila also observed rug burns on Dorado's hip and "fresh" bruising on both sides of her chest, which Dorado considered the direct result of her altercation with Appellant.

Dorado provided a videotaped statement to De Avila at the scene. In her videotaped statement, Dorado states that after confronting Appellant about the text messages, she initially pushed him, and that Appellant responded by pushing her back, pulling her to the floor, and dragging her through the hallway. Appellant then shoved her down and pinned her to the floor with his legs, "squished" her face with his hands, placed his hands over her mouth and nose,

2

pinned her down on a couch using his hands to press against her head, threw her down in the kitchen where she hit the refrigerator, and pulled her clothing over her head to the point that her clothing ripped. When De Avila asked if she had felt pain during the ordeal, Dorado responded in the affirmative, gesturing to various areas of her body, including her neck, arm, stomach, chest, and leg. When asked if she wanted to "press charges" against Appellant, however, Dorado began crying and stated she did not know what she should do.

De Avila took photographs of Dorado at the scene, which were introduced into evidence over Appellant's objection. De Avila described the photographs for the jury, noting they displayed bruising on both sides of Dorado's chest, scratch marks and redness on her chest, nose, and cheek area, and rug burns on her hip. One of the photographs appeared to contain images of marks at or near Dorado's neck.

When called as a witness by the State, Dorado was less than forthcoming about what had occurred during the altercation. Dorado acknowledged that she did not want to testify against Appellant, that she still loved him, and that she did not want him to go to jail. Dorado repeatedly claimed that she did not have a clear recollection of what happened on the day of the assault, and that she had only a vague recollection of giving De Avila a videotaped statement.[1] After the State attempted to refresh her memory with the videotape, Dorado generally recalled that she and Appellant had been involved in an argument over the text messages, and that she had struck him, causing the argument to turn "physical." Dorado's memory seemed to end at that point, and despite acknowledging that she told Officer De Avila in the videotape that Appellant had put his arm around her neck and had dragged her through their residence, Dorado claimed that she had no

---

[1] Dorado recalled telling De Avila at the scene that she did not want to press charges against Appellant, and asking him to erase the videotaped statement. She expressed surprise at trial that it had not been erased.

3

recollection of that occurring. Rather, Dorado expressed certainty that Appellant did not strangle her and that she never had any trouble breathing during their altercation.

## DISCUSSION

### Jury Argument

In his first issue, Appellant contends the State made three improper and prejudicial statements during closing arguments. Although the trial court granted Appellant's objections and instructed the jury to disregard the statements, Appellant contends that the trial court abused its discretion when it refused to grant a mistrial. We disagree.

### *Standard of Review and Proper Jury Argument*

When the trial court sustains an objection to an improper jury argument and instructs the jury to disregard the argument, but denies a motion for mistrial, an appellate court must determine whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex.Crim.App. 2004). In making this determination, we balance: "1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); 2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and 3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Archie v. State*, 221 S.W.3d 695, 700 (Tex.Crim.App. 2007) (discussing *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex.Crim.App. 1998)). A mistrial is the remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Hawkins,* 135 S.W.3d at 77. A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex.Crim.App. 2009).

4

Proper jury argument includes four areas: (1) summary of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) answers to opposing counsel's arguments; and (4) pleas for law enforcement. *Jackson v. State*, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000). In order to constitute reversible error, a jury argument must have been manifestly improper or injected new, harmful facts into the proceedings. *Id.* at 673-74; *see also Borjan v. State,* 787 S.W.2d 53, 56-57 (Tex.Crim.App. 1990) (an improper argument constitutes reversible error when, in light of the record as a whole, it is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceedings).

### *The Prosecutor's Statements*

Appellant complains about three statements the prosecutor made during closing argument:

- See, everything they're doing is smoke and mirrors, trying to take your attention off the obvious, that she was assaulted. *Somebody's got to protect these women, ladies and gentlemen.* [Emphasis added].

- [Appellant] committed a crime and he needs to be held accountable for his actions. *We have to protect the women of our community, whether they are mothers or our daughters*. [Emphasis added].

- So often we sit in front of the TV set and we watch the news . . . and we see great injustices being done. We see people are not taken up to charge doing the right thing. And we sit there and say to ourselves, if I'm ever given the chance, I'm going to make a difference. . . . I'm not going to let that happen. Well, this is your chance to make a difference. *This is your chance to make a difference*. You can either come back with a not guilty and empower the Defendant, make him think he's untouchable and he could continue to act like this, *or you could follow the oath you took before God to convict.* [Emphasis added].

Appellant objected to all of these statements, and the trial court sustained each of the objections and instructed the jury to disregard the prosecutor's statements each time.[2]   Appellant also moved for a mistrial in each instance, but the trial court denied all of his requests.

### Pleas for Law Enforcement

We first consider whether the statements—*Somebody's got to protect these women, ladies and gentlemen; We have to protect the women of our community, whether they are mothers or our daughters;* and *This is your chance to make a difference*—constituted proper pleas for law enforcement.   Appellant contends the prosecutor's arguments went beyond merely making a plea for law enforcement, and instead were improperly "designed to arouse the passion and prejudices of the jury," and improperly "injected new facts harmful to Appellant into the trial proceedings."

But, as the State points out, a prosecutor may ask the jury to consider the impact its verdict may have on the community as a whole, on a particular segment of the community, or on a group of victims, such as women and children, and may ask the jury to represent that segment of the community and to send a message to the community with its verdict.   *See*, *e.g., Borjan,* 787 S.W.2d at 56-58 (arguments on behalf of "victims of other crimes" and "the ones who never come and tell you about it" were proper pleas for law enforcement in aggravated child rape case); *Stone v. State*, 574 S.W.2d 85, 90 (Tex.Crim.App. 1978) (State's argument asking jury to think about other children in the community when rendering its verdict in a child sexual abuse case was deemed a proper plea for law enforcement); *Munoz v. State,* 803 S.W.2d 755, 756-57 (Tex.App. –

---

[2]  Appellant stated no specific factual or legal ground in support of his objections.   However, in each instance, the trial court appeared to understand the nature of Appellant's objections.   Although a specific objection is typically required to preserve error on appeal, a general objection will preserve error when the record shows the trial court understood the nature of the objection.   *See, e.g., McDonald v. State,* No. 08-08-00103-CR, 2010 WL 3910424, at *7 (Tex.App. – El Paso Sept. 30, 2010, pet. ref'd) (not designated for publication).   It appears the trial court believed the prosecutor was not making proper pleas for law enforcement during his argument, as the court admonished the prosecutor that he was not permitted to ask the jury to consider the need to "protect" a particular segment of the community or to urge the jury to send a message to the community.

6

Houston [14th Dist.] 1991), *pet. ref'd*, 809 S.W.2d 501 (Tex.Crim.App. 1991) (the prosecutor made a legitimate plea for law enforcement in a sexual assault case, when he asked the jury to send a message with its verdict to three particular segments of the community—women who have met appellant, women who used the jogging trail where the assault took place, and the police who apprehended the appellant).

However, while the State may urge the jury to consider the impact of its verdict on the community, the State may not argue that the community *expects or demands* a particular verdict or a particular punishment. *Robbins v. State,* 145 S.W.3d 306, 314-15 (Tex.App. – El Paso 2004, pet. ref'd); *see also Martinez v. State,* 17 S.W.3d 677, 692 (Tex.Crim.App. 2000). Arguing that the community expects or desires a certain outcome injects new and harmful facts into the trial proceeding—the community's viewpoint on the defendant's case—which, by its very nature, is not based on any evidence presented at trial. *See, e.g., Cortez v. State*, 683 S.W.2d 419, 421 (Tex.Crim.App. 1984) (noting its disapproval of arguments asking "the jury to convict or punish the defendant [based] upon public sentiment or desire rather than upon the evidence that the jury had received"). Appellant contends the prosecutor's arguments strayed into this impermissible territory.

In *Robbins,* we were faced with a similar issue in a case involving an assault on a police officer in which the prosecutor asked the jury to "send a message to the police of this city" to demonstrate that they "cared" about police officers and their safety. 145 S.W.3d at 314-15. The prosecutor went on to argue that the jurors were in a position to "do something about" the crimes being committed in society, and to "make America a better place." *Id*. at 315. In concluding these statements were proper pleas for law enforcement, we noted that a plea for law enforcement

7

may take many forms, such as arguing the relationship between the jury's verdict and the deterrence of specific crimes or crimes in general, reminding the jury of the effect its verdict may have on specific segments of the community or the community in general, and urging the jury to represent the community or to send a message to the community. *Id*. at 315-16; *see also Harris v. State,* 122 S.W.3d 871, 887–88 (Tex.App. – Fort Worth 2003, pet. ref'd). Although we recognized that a prosecutor may not argue that the community "expected or demanded" a particular verdict or a punishment, we concluded that the prosecutor's comments did not fall into that category. *Robbins*, 145 S.W.3d at 315. To the contrary, we noted that the prosecutor's argument, when viewed in its entirety, was no more than "an invitation to the jury to represent the community and to send a message to the officers that it values their service and their lives." *Id.*; *see also Rhodes v. State,* 450 S.W.2d 329, 331–32 (Tex.Crim.App. 1970) (prosecutor made a proper plea to law enforcement by arguing that the jury could send a message that it was "proud" of its law enforcement officers and that it intended to support the officers and find the defendant guilty for the offense).

The Court of Criminal Appeals has expressly held that a prosecutor's appeal to the jury to "protect" the community or a particular segment of the community in rendering its verdict is a proper plea for law enforcement, and does not improperly inflame the passions of the jury or inject new or harmful facts into evidence. *Ridyolph v. State*, 545 S.W.2d 784, 790 (Tex.Crim.App. 1977) (State's argument to the jury, asking that "[s]omebody protect our policemen," was held to be a proper plea for law enforcement); *Myers v. State,* 468 S.W.2d 847, 848-49 (Tex.Crim.App. 1971) (prosecutor's comments in a sexual assault case appealing to the jury to protect women in the community was not an improper jury argument and did not improperly inflame the passions of

the jury.); *see also Lugo v. State,* 732 S.W.2d 662, 663-64 (Tex.App. – Corpus Christi 1987, no pet.) (prosecutor's statements in case involving stabbing of police officer, arguing the need to "protect" the county's citizens and law enforcement officers by declining to give the defendant probation was a proper plea for law enforcement, and not a statement that the police department or the community was expecting or demanding incarceration).

Similarly here, the prosecutor did no more than ask the jury to consider the need to "protect" women in the community from such attacks, and pointed out to the jury that they were in a position to "make a difference." Viewing these arguments in their entirety, we conclude the prosecutor was properly asking the jurors to send a message to women in the community that their rights and safety would be protected, urging them to consider the impact its verdict would have on that segment of the community, and inviting the jury to represent that segment of the community in rendering its verdict. The prosecutor's statements did not indicate that the community in general, or women in particular, were "demanding" or expecting a certain verdict or punishment. Accordingly, we conclude that this prosecutor's arguments were proper pleas for law enforcement.

### The "Oath to Convict"

More troubling is the prosecutor's statement that the jurors had the choice to "follow the oath [they] took before God to convict." Although the trial court sustained Appellant's objection, instructed the jury to disregard the statement, and ordered the statement stricken from the record, the court denied Appellant's motion for mistrial. When trial court directed the prosecutor to "rephrase" his statement, the prosecutor admitted that he had "slipped." The prosecutor then attempted to rephrase his argument, stating: "Send a message to [the] community. Follow your oath before God—." Appellant then interrupted the prosecutor, and lodged another objection.

9

After sustaining the objection, the trial court once again ordered the jury to disregard the statement. The State requested a bench conference, in which the prosecutor explained he was attempting to rephrase without stating to the jury that they swore an oath to convict, but that he had been cut off. The prosecutor then rephrased his argument before the jury, without objection, as follows: "You took an oath to follow the law and if we prove to you beyond a reasonable doubt that every element was met, you have to follow your oath and convict."

Appellant contends the prosecutor's initial statement that the jury had taken an "oath before God to convict," was so prejudicial that it could not be cured by the trial court's instruction to disregard. Appellant asserts the prosecutor not only made a clear misstatement of the jury's oath, but also improperly invoked God's name in doing so.

First, we conclude that although the prosecutor "invoked" God's name in his argument, he did not do so improperly. In some instances, invoking God's name may constitute improper jury argument, such as when a prosecutor makes gratuitous references to God, or otherwise urges the jury to base its decision on matters involving "divine retribution." *See, e.g., Turner v. Quarterman,* A-08-CA-811-SS, 2009 WL 2406203, at \*10 (W.D. Tex. Aug. 3, 2009) (prosecutor made improper, albeit curable, "references to God and urged the jury during closing argument to base their guilt-innocence determination on divine retribution," which did not fit within any of the four categories of proper jury argument under Texas law).

In the present case, however, the prosecutor did not invoke God's name in an attempt to prejudice Appellant's case or to arouse the passion of the jurors, nor did he suggest the jury should base its verdict on any notion of "divine retribution." Instead, the prosecutor's argument was directed at reminding the jurors of the oath they took to follow the law, which, by statute contains

the term "God."   The Texas Code of Criminal Procedure does, in effect, require the jury to swear an "oath to God," because it provides that upon being empaneled, the following oath must be administered to the jury:   "You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render according to the law and the evidence, so help you God."   TEX. CODE CRIM. PROC. ANN. art. 35.22 (West 2006).

The only indiscretion then in the prosecutor's statement was his inadvertent misstatement that the oath was "to convict," rather than to follow "the law."   The State argues that any prejudice resulting from the prosecutor's "slip of the tongue" was cured not only by the trial court's instruction to disregard the misstatement, but also from the prosecutor's own clarification of his intended argument, thereby avoiding the need for a mistrial.

Although we do not discount the potentially serious nature of the prosecutor's misstatement, we agree that any prejudice arising therefrom was cured by the curative measures taken by both the trial court and the prosecutor.   A prompt instruction to disregard ordinarily cures any harm from improper argument. *Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex.Crim.App. 2000); *Shannon v. State,* 942 S.W.2d 591, 597 (Tex.Crim.App. 1996); *Walker v. State*, No. 08–13–00239–CR, 2015 WL 1396043, at *5 (Tex.App.—El Paso Mar. 25, 2015, no pet. h.) (not designated for publication).   And, on appeal, we generally presume the jury followed the trial court's instructions.   *Thrift v. State*, 176 S.W.3d 221, 224 (Tex.Crim.App. 2005).   A mistrial is required only in those extreme circumstances where the prejudice cannot be cured by the instruction.   *Hawkins,* 135 S.W.3d at 77*; see also Cintron v. State,* No. 08-05-00176-CR, 2006 WL 2516516, at *3 (Tex.App. – El Paso Aug. 31, 2006, no pet.) (not designated for publication) (concluding that prosecutor's allegedly improper comment on the defendant's failure to testify at

trial was not so blatant or prejudicial that it could not be cured by the trial court's instruction to disregard the comment).

Moreover, the prosecutor immediately corrected himself, thereby mitigating any harmful effect of his misstatement. *See Hawkins*, 135 S.W.3d at 84 ("Although a prosecutor's self-corrective action might not carry the same weight as a trial court's instruction to disregard, it is nevertheless a relevant consideration in determining harm and can, in the appropriate circumstances, render an improper comment harmless."); *see also Mendoza v. State*, No. 08-13-00293-CR, 2015 WL 5999596, at *7 (Tex.App. – El Paso Oct. 14, 2015, pet. filed) (not designated for publication) (any harm from prosecutor's mistaken statement on defendant's failure to testify was mitigated by his prompt correction); *Walker v. State*, No. 14–10–00389–CR, 2011 WL 977534, at *8 (Tex.App.—Houston [14th Dist.] March 22, 2011, pet. ref'd) (mem. op., not designated for publication) (prosecutor's misstatement of law concerning lesser included offense harmless where prosecutor corrected herself).

The Court of Criminal Appeals reached a similar conclusion in *Hawkins*, where the Court concluded that the "curative measures" taken by both the trial court and the prosecutor rendered the misstatement harmless and that the trial court therefore did not abuse its discretion in denying the defendant's motion for a mistrial. 135 S.W.3d at 84; *see also Green v. State,* 640 S.W.2d 645, 648-49 (Tex.App. – Houston [14th Dist.] 1982, no pet.) (holding that a mistrial was not warranted where a prosecutor made a slip of the tongue by inadvertently stating the defendant had failed to testify at trial, when she meant that he had failed to present certain evidence in support of his defense at trial); *Ramirez v. State*, No. 08-06-00273-CR, 2007 WL 3226187, at *5-7 (Tex.App. – El Paso Nov. 1, 2007, no pet.) (not designated for publication) (trial court did not abuse its

discretion in denying defendant's motion for mistrial where the prosecutor's improper argument stating that the citizens of the county "required" the jury to punish the defendant, was cured by the trial court's instruction to disregard, as well as the prosecutor's apology and self-corrective action in clarifying his statement, thereby rendering the prosecutor's argument harmless).

We similarly conclude that the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. The prosecutor's statement, in which he mistakenly stated that the jury had sworn an oath "to convict," was merely a slip of the tongue, and the prosecutor immediately clarified that he had intended to refer to the jury's "oath to follow the law." Any harm resulting from the improper comment was cured not only by the prosecutor's self-correction, but by the trial court's instruction to the jury to disregard the comment.

Moreover, we conclude that the certainty of appellant's conviction absent the allegedly improper comment was great, in light of the strength of the evidence supporting the conviction. As explained in more detail below in Issue Three, the State presented sufficient evidence to support a finding of guilt on all elements of assault causing bodily injury, and we are therefore able to say with certainty that the prosecutor's improper comment, which the trial court properly instructed the jury to disregard, would not have had any impact on the jury's verdict.

Accordingly, we conclude the trial court did not abuse its discretion in denying Appellant's motion for a mistrial. We overrule Appellant's first issue.

**Lesser Included Offense**

The indictment charged Appellant with "assault family violence by strangulation," and specifically alleged Appellant had caused bodily injury to Dorado by "impeding the normal breathing or circulation of the blood . . . by applying pressure to the throat or neck of the said

13

Danielle Dorado[.]"  At the close of evidence, Appellant moved for a directed verdict, arguing that the State had failed to present evidence to demonstrate Appellant had applied any pressure to Dorado's neck or throat or that her breathing or circulation had been impeded in any way.  After the trial court denied the motion, the State requested the trial court charge the jury on the lesser included offense of "assault family violence."  The trial court submitted the lesser included offense of assault causing bodily injury over Appellant's objection.  The jury found Appellant guilty of the lesser included offense.

In his second issue, Appellant contends the trial court erred in granting the State's request to include assault causing bodily injury as a lesser included offense, arguing the evidence was insufficient to establish whether an assault occurred.  However, when the State requests an instruction on a lesser included offense, the test is not whether the State presented sufficient evidence of the lesser included offense, but whether the elements of the lesser included offense are established by proof of the same or less than all of the facts required to establish the charged offense, without regard to the evidence presented at trial.  *Hall v. State,* 225 S.W.3d 524, 535-36 (Tex.Crim.App. 2007).  We conclude the requirements of this test were met.

### Standard of Review and Applicable Law

A two-pronged test is applied to determine when a trial judge should submit a lesser included offense when requested by the defendant.  *Grey v. State,* 298 S.W.3d 644, 645 (Tex.Crim.App. 2009); *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App. 1993).  First, the lesser included offense must be included within the proof necessary to establish the charged offense.  Second, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense.  *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim.App. 1981)

14

(opin. on reh'g).  However, in *Grey*, the Court held that the second prong does not apply in cases in which the State has requested submission of the lesser included offense.  *Grey*, 298 S.W.3d at 645.  Because the State may abandon an element of the charged offense without prior notice and proceed to prosecute a lesser included offense, there is no "logical reason why the State could not abandon its unqualified pursuit of the charged offense in favor of a qualified pursuit that includes the prosecution of a lesser included offense in the alternative."  *Id.* at 650; *see also In re State ex rel. Weeks,* 391 S.W.3d 117, 123-24 (Tex.Crim.App. 2013) (the State has the choice of pursuing the charged offense alone, abandoning the charged offense altogether in favor of prosecuting the lesser included offense, or pursuing both by obtaining instructions on both offenses).

Whether the first prong in the lesser included-offense analysis has been met is a question of law, and does not depend on the evidence produced at the trial.  *Hall v. State*, 225 S.W.3d 524, 535 (Tex.Crim.App. 2007); *see also Wortham v. State,* 412 S.W.3d 552, 555 (Tex.Crim.App. 2013).  Texas follows the "cognate-pleadings approach," which requires the court to compare the elements of the offense as alleged in the indictment with the elements of the potential lesser included offense.  *Hall*, 225 S.W.3d at 535-36; *see also Bowen v. State,* 374 S.W.3d 427, 431 (Tex.Crim.App. 2012).  An offense is deemed a lesser included offense of another offense if the indictment for the greater-inclusive offense either:  (1) alleges all of the elements of the lesser included offense; or (2) alleges elements plus facts from which all of the elements of the lesser included offense may be deduced.  *State v. Meru*, 414 S.W.3d 159, 162 (Tex.Crim.App. 2013); *see also* TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).[3]

---

[3] "An offense is a lesser included offense if:  (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to

15

*Analysis*

Applying the cognate-pleadings approach, we conclude that assault causing bodily injury was a lesser included offense of the charged offense of assault family violence by strangulation.

Both offenses are defined in Section 22.01 of the Texas Penal Code. Section 22.01(a) sets out the three elements of the Class A misdemeanor offense of assault causing bodily injury:

1) A person

2) intentionally, knowingly, or recklessly

3) causes bodily injury to another, including the person's spouse.

TEX. PENAL CODE ANN. § 22.01(a) (West Supp. 2015).

Section 22.01(b) provides that assault causing bodily injury becomes a third-degree felony when additional elements are present. In particular, the offense of assault family violence by strangulation consists of the following five elements:

1) A person

2) intentionally, knowingly, or recklessly

3) causes bodily injury to another, including the person's spouse;

4) the offense is committed against "a person whose relationship to or association with the defendant is described by Section 71.0021(b), 71.003, or 71.005, Family Code,"[4] and

5) the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth.

_____

establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense."

[4] This element requires the State to prove that the defendant and the victim were in a "dating relationship" (Tex. Fam. Code Ann. § 71.0021(b) (West Supp. 2015)), were members of the same "family," including individuals who are the parents of the same child, without regard to marriage (Tex. Fam. Code Ann. § 71.003 (West 2014)), or were members of the same "household," meaning that the two were living together in the same dwelling, without regard to whether they were related (Tex. Fam. Code Ann. § 71.005 (West 2014)). Appellant did not deny that he and Dorado were either in a dating relationship, members of the same family, or members of the same household.

16

TEX. PENAL CODE ANN. § 22.01(b) (West Supp. 2015); *see Harrison v. State,* No. 06-11-00196-CR, 2012 WL 1813519, at *4-6 (Tex.App. – Texarkana May 18, 2012, pet ref'd) (not designated for publication) (recognizing the five elements of assault family violence by occlusion); *see also Marshall v. State,* 479 S.W.3d 840, 844 (Tex.Crim.App. 2016) (recognizing that a simple assault, which occurs when one "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse," may be enhanced to a third-degree felony if it is committed against a family member "by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth").

In the present case, Appellant was charged by indictment with the third degree felony of assault family violence by strangulation, alleging all five elements of the offense:

> [Appellant] did then and there intentionally, knowingly, or recklessly cause bodily injury to Danille Dorado, a member of [Appellant's] family, household, or a person with whom the [Appellant] has or has had a dating relationship, by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of [Dorado's] blood … by applying pressure to [Dorado's] . . . throat or neck . . . .

As demonstrated by the above comparison, the indictment charging Appellant with assault family violence by strangulation alleged the same three statutory elements required to find Appellant guilty of the Class A misdemeanor offense of assault causing bodily injury, *i.e.,* (1) Appellant; (2) intentionally, knowingly or recklessly; (3) caused bodily injury to Dorado.

Under the cognate-pleadings test, we therefore conclude that the offense of assault causing bodily injury was a lesser included offense of the offense of assault family violence by strangulation, as alleged in the indictment. *See Harrison,* 2012 WL 1813519, at *4 (using the "cognate-pleadings" test, court concluded that assault causing bodily injury was a lesser included

17

offense of the charged offense of assault family violence by "occlusion" as all elements required to prove the lesser offense of assault were included in the indictment for the greater offense, thereby satisfying the first prong in the *Hall* analysis). Accordingly, we also conclude that the trial court properly granted the State's request to instruct the jury on the lesser included offense. We overrule Appellant's second issue.

## Sufficiency of the Evidence

In his third issue, Appellant challenges the sufficiency of the evidence, claiming the State did not "provide any evidence that an assault occurred." We conclude the evidence was sufficient to sustain the jury's verdict under a hypothetically correct jury charge.

### *Standard of Review*

We review sufficiency complaints under the legal-sufficiency standard enunciated in *Jackson v. Virginia. Fernandez v. State*, 479 S.W.3d 835, 837 (Tex.Crim.App. 2016); *Brooks v. State,* 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). The relevant inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). We examine the evidence in the light most favorable to the verdict and ask whether any rational fact finder could have found the elements of the charged offense beyond a reasonable doubt. *Fernandez*, 479 S.W.3d at 837-38; *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. If a rational fact finder could have so found, we will not disturb the verdict on appeal. *Fernandez*, 479 S.W.3d at 838; *see Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789 (upholding conviction where evidence was legally

18

sufficient); *Temple v. State,* 390 S.W.3d 341, 363 (Tex.Crim.App. 2013) (affirming judgment where evidence was legally sufficient to support a conviction).

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014); *Carrizales v. State,* 414 S.W.3d 737, 742 n.20 (Tex.Crim.App. 2013) (citing *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App. 2007)). The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses. *Dobbs*, 434 S.W.3d at 170; *see Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; s*ee Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *see also Clayton v. State,* 235 S.W.3d 772, 778 n.12 (Tex.Crim.App. 2007) (observing that it is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts") (quoting *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper,* 214 S.W.3d at 13.

### The Hypothetically Correct Jury Charge

We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex.Crim.App. 2009). A hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant

19

was tried. *Id.* The law, as authorized by the indictment, means the statutory elements of the charged offense, as modified by the charging instrument. *See Curry v. State,* 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).

In the present case, the trial court properly instructed the jury that it was required to find that Appellant intentionally, knowingly or recklessly caused bodily injury to Dorado before returning a guilty verdict. It further properly defined "bodily injury" to mean "physical pain, illness, or any impairment of physical condition." *See Marshall v. State,* 479 S.W.3d 840, 844 n.17 (Tex Crim.App. 2016) (citing TEX. PENAL CODE ANN. § 1.07(a)(8) and defining bodily injury as "physical pain, illness, or any impairment of physical condition."). It did not, however, provide the manner and means by which the Appellant committed the assault, or in other words the "actus reus" by which Appellant caused bodily injury to Dorado. *See Sanchez v. State,* 376 S.W.3d 767, 773 (Tex.Crim.App. 2012) (the term "manner and means" refers to the *actus reus* of the crime, or in other words, a description of how the offense was committed). The indictment did, however, charge the greater offense by alleging that Appellant caused bodily injury to Dorado "[by] impeding the normal breathing or circulation of the blood. . . by applying pressure to [her] . . . throat or neck[.]" As explained above, impeding the victim's breathing by applying pressure to the victim's neck or throat is not just the manner and means of committing the offense of assault family violence, but is actually an element of that offense. Therefore, under *Gray*, the State was free to abandon that element of the greater offense, and pursue the lesser included offense of assault, which required only a finding of bodily injury.

The State interprets this to mean that it was also free to abandon its sole theory in the case, as alleged in the indictment, that Dorado suffered bodily injury when Appellant applied pressure to

20

her neck and throat; and that it could instead pursue a conviction based on an entirely new theory that Dorado suffered bodily injury by other conduct not alleged in the indictment. Thus, the State argues that Appellant's conviction should be upheld based on the evidence that Appellant caused bodily injury to Dorado, not only by applying pressure to her neck, but also by striking her in the face, dragging her across the residence, pinning her to the floor, and placing his leg on her chin and neck. The State contends that we should also consider the documentary evidence that Dorado not only suffered injuries in her neck area, but also suffered injuries to other parts of her body as well, including her chest, nose, cheek, and hip.[5] We disagree.

We recognize that *Grey* makes clear that in applying the cognate-pleadings approach, a court must focus only on the elements of the offense, and not on the evidence presented at trial, in determining whether an offense is a lesser included offense of an offense charged in an indictment. However, we do not take this to mean that the jury could find Appellant guilty of the lesser included offense based on entirely new factual allegations not set forth in the indictment, or that Appellant's conviction of the lesser included offense could be supported by evidence of acts committed by the defendant that were not alleged in the indictment.

This principle is illustrated in *Irving v. State,* 176 S.W.3d 842, 845–46 (Tex.Crim.App. 2005). In *Irving*, the State charged the defendant with aggravated assault by hitting the victim with a baseball bat. At trial, however, the defendant denied that he hit the victim with the bat, but acknowledged that he had grabbed the victim and eventually fell on top of her. Based on his own

---

[5] At trial, the prosecutor argued to the jury that it could find Appellant guilty of the lesser included offense of assault not only it believed Appellant applied pressure to Dorado's neck or throat area as alleged in the indictment, but as well if it found that Dorado had suffered bodily injury from Appellant's other actions, such as when he dragged her on the carpet, slapped her on the face, pushed her to the ground, and placed his leg across her head and neck area. Appellant did not object to the prosecutor's argument at trial, and does not challenge the propriety of the prosecutor's argument on appeal.

testimony, the defendant sought an instruction on the lesser included offense of simple assault based on his entirely different theory of the events in question. *Id.* at 845-46. The Court held that because the "conduct constituting the offense of assault for which the Appellant wanted an instruction is not the same as the conduct charged in the indictment for aggravated assault, assault by means of grabbing the victim and eventually falling on top of her is not a lesser-included offense of aggravated assault by striking the victim with a bat." *Id*. at 846 . The Court noted that "[a]ssault by grabbing and falling on someone may be a lesser-included offense of aggravated assault in some instances, but not as the greater offense was charged in the indictment in this case." *Id.* at 846; *see also Luna v. State,* No. 08-13-00084-CR, 2015 WL 1949176, at *6 (Tex.App. – El Paso 2015, pet. ref'd) (not designated for publication) (defendant, who was charged with aggravated assault for allegedly stabbing his victim, was not entitled to an instruction on simple assault based on evidence that Appellant only punched and kicked the victim, as the conduct making up the offense of assault was not the same conduct charged in the indictment for aggravated assault and therefore was not a lesser included offense of the offense charged).

While we recognize that *Irving* involved a defendant requesting the lesser included offense, we believe the same principle applies in the present case where the State requested the lesser included offense. In both, the trial court could not permit the jury to convict the defendant of a lesser included offense based on an entirely new theory of the case, or based on entirely new conduct that was not alleged in the indictment. In fact, allowing the State to raise a new theory of prosecution not contained in the original indictment could invoke serious constitutional considerations, since a defendant has a due process right to receive adequate notice of the charged offense before trial in order to allow him to prepare his defense. *See Adams v. State,* 707 S.W.2d

22

900, 901 (Tex.Crim.App. 1986) (the Texas Constitution mandates that notice of the charge against a defendant, which provides him with the necessary information to prepare a defense must come from the face of the charging instrument). We conclude therefore that the Appellant's conviction on the lesser included offense of assault causing bodily injury can be based only on the same factual allegations set forth in the indictment, *i.e.,* that Appellant caused bodily injury to Dorado by applying pressure to her neck or throat.

Therefore, we conclude that a hypothetically correct jury charge in this instance would have instructed the jury that it could only convict Appellant of the lesser included offense of assault causing bodily injury if it found that Appellant intentionally, knowingly or recklessly caused bodily injury to Dorado by applying pressure to her neck or throat. Therefore, our review of the sufficiency of the evidence will be limited to determining whether sufficient evidence was presented at trial to support a finding that Appellant committed bodily injury in this manner, and we will not consider evidence that Appellant may have also caused bodily injury to Dorado by other conduct such as striking or pushing Dorado.

### *The Offense of Assault Causing Bodily Injury*

Under a hypothetically correct jury charge, the State was required to prove beyond a reasonable doubt that Appellant committed the offense of assault, by intentionally, knowingly or recklessly causing bodily injury to Dorado "by applying pressure to [Dorado's] throat or neck," as alleged in the indictment. By statute, the term, "bodily injury" means "physical pain, illness, or any impairment of physical condition." TEX. PENAL CODE ANN. § 1.07(a)(8) (West Supp. 2015). The Texas Court of Criminal Appeals has broadly interpreted this definition to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching."

23

*Lane v. State,* 763 S.W.2d 785, 786 (Tex.Crim.App. 1989); *see also State v. Vigil*, No. 08-13-00273-CR, 2015 WL 2353507, at *4 (Tex.App. – El Paso May 15, 2015, pet ref'd) (not designated for publication). The victim is not required to testify directly that she suffered pain, and instead, the jury is permitted to "draw reasonable inferences from the evidence, including an inference that the victim suffered pain as a result of her injuries." *Arzaga v. State,* 86 S.W.3d 767, 778 (Tex.App. – El Paso 2002, no pet.). In addition, the existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish "bodily injury" within the meaning of the statute. *Id*.

### *Application*

Appellant contends the State presented no evidence that an assault took place. Appellant points out that Dorado herself claimed at trial that she did not remember being assaulted by Appellant, and in particular, she denied that Appellant had strangled her or otherwise placed in a chokehold.[6] Appellant acknowledges that the State also presented other evidence, such as Officer De Avila's testimony in which he described the various statements made by Dorado at the scene, in which she described being placed in a chokehold by Appellant. Appellant contends, however, that De Avila's testimony was based on mere "suspicions and assumptions," and that the remainder of the evidence presented by the State was "ambiguous." He concludes that the great weight of the evidence supported an acquittal. We disagree.

De Avila testified that Dorado reported at the scene that Appellant had grabbed her by the neck in a manner that was consistent with a chokehold position, and further testified that he

---

[6] Appellant also contends that the evidence was insufficient to establish that she stopped breathing or that her breathing was "impeded" during the assault. The State, however, was not required to present proof that Appellant's breathing was impaired or impeded in order to establish the elements of the Class A misdemeanor offense of assault causing bodily injury under Section 22.01(a) of the Penal Code.

24

observed "scratch marks and redness" around Dorado's neck, which he believed was consistent with having been "squeezed" around the neck. In addition, the State supported De Avila's testimony by playing Dorado's videotaped statement recorded at the scene, in which she gestured to her neck area when describing the injuries she suffered during Appellant's assault. The State also introduced into evidence the photographs taken by De Avila, which showed, among other things, that Dorado had marks at or in her neck area. In addition, in her videotaped statement, Dorado responded positively when asked if she had felt pain during the assault.

While Dorado attempted at trial to contradict the statements that she had made at the scene, she candidly admitted that she did not want to testify against Appellant and that she would do virtually anything to keep him from going to jail. The jury was free to believe or disbelieve any or all of Dorado's testimony, and was free to reconcile any inconsistencies between Dorado's testimony and De Avila's testimony as they saw fit. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex.Crim.App. 2007) (it is the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts); *see also Bowden v. State,* 628 S.W.2d 782, 784 (Tex.Crim.App. 1982) (holding that contradictions in evidence are reconciled by the jury and will not result in reversal so long as there is enough credible testimony to support the verdict); TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979).[7]

It is apparent that the jury chose to believe De Avila's testimony and the documentary evidence presented at trial, both of which established that Appellant did in fact apply pressure to

---

[7] "The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is to be attached to a certain species of evidence."

25

Dorado's neck causing her bodily injury. Because that choice was reasonable, we defer to the jury's determination of credibility on that issue, and conclude that the State presented sufficient evidence to support the jury's verdict. *See Arzaga,* 86 S.W.3d at 778 (jury's verdict finding defendant guilty of assault was supported by substantial evidence, despite victim's failure to testify at trial, where officers at the scene testified regarding statements made by the victim, and State introduced photographs of victim's injuries); *see also Carrillo v. State*, No. 08-11-00076-CR, 2013 WL 1229011, at *7 (Tex.App. – El Paso March 27, 2013, no pet.) (not designated for publication) (where victim of alleged family-violence assault recanted her allegations against defendant and testified that she had previously lied to police about the assault, jury was free to disbelieve her trial testimony and to instead believe the testimony of the officers who interviewed her at the scene, as well as the statements she made during her 911 call). Having found sufficient credible evidence to support the jury's verdict, we overrule Appellant's third issue.

## CONCLUSION

The trial court's judgment is affirmed.


                                        STEVEN L. HUGHES, Justice
June 14, 2016

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

26